326 So.2d 519 (1976)
Ewella Chauvin LEWIS, Plaintiff-Appellee,
v.
William R. HAGAR, Defendant-Appellant.
No. 5297.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
Rehearing Denied March 4, 1976.
H. Ward Fontenot, Cameron, for plaintiff-appellee.
Larry A. Roach, Lake Charles, for defendant-appellant.
*520 Before MILLER, WATSON and CUTRER, JJ.
MILLER, Judge.
Plaintiff Ewella Chauvin Lewis appeals the rejection of her demand against her former husband defendant William R. Hagar for a declaratory judgment recognizing her to be owner of an undivided half interest in Lot 17 of Block B, Highland Park Place No. 2, Addition to the City of Lake Charles, Louisiana. We affirm.
The parties acquired the property in 1963. They paid nothing down and assumed the balance due on a $6,810 mortgage recorded in February 1950. In 1967, plaintiff became dissatisfied with the marriage and without notifying her husband moved from the home taking approximately half the movable family assets with her. A few months after the separation, the parties negotiated the following property settlement which was prepared by plaintiff's attorney (who no longer represents plaintiff) and signed in his office.
Mr. William R. Hagar
Lake Charles, Louisiana
Dear Mr. Hagar:
This will confirm our understanding as follows:
1) I am filing suit for legal separation in Cameron Parish and intend to prosecute this matter to a final judgment of separation;
2) I have removed from our former residence all of the furniture and items of property which I desire to have; and
3) In consideration of your paying to me the sum of $500, receipt of which is hereby acknowledged, I agree to transfer to you all of my interest which I have in all of the other property owned by us acquired during our marriage. This transfer shall be made immediately after the rendition of the judgment of separation of our marriage.
 s/Ewella Chauvin Hagar
The former wife is here seeking a declaratory judgment reforming this interspousal agreement made on her initiative prior to the judicial separation or divorce between her and her former husband. She contends in her petition that the agreement was not intended to convey her interest in Lot 17 of Block B; that she only intended to release her interest in an acre of land acquired from her husband's father during the marriage for a recited consideration of $250. She admits she did not see the purchase price paid.
When plaintiff did not proceed to get the legal separation, defendant obtained a Texas divorce in late 1967. The community consisted of Lot 17 Block B, an unimproved one acre tract of land located some distance from the nearest highway, the household goods (of which the valuable ones were in plaintiff's possession), one three year old Ford that was running and a ten year old Dodge that was not. Both pieces of real property were of marginal value.
Plaintiff makes two contentions: 1) the agreement was made while she and defendant were still husband and wife and under LSA-C.C. art. 1790 they lacked capacity to contract as between themselves; 2) the agreement does not affect Lot 17 of Block B.
Agreements reached under the art. 1790 incapacity are relative nullities and can be ratified when the incapacity is removed. Fisher v. Fisher, 261 So.2d 85 (La.App. 3 Cir. 1972). In Fisher, ratification was accomplished when property received through the agreement was alienated. Mrs. Hagar told her husband she would settle her claims against the community for $500 which would be used as a down payment on a housetrailer. She used the $500 for the down payment. In an effort *521 to distinguish Fisher, plaintiff contends payment of the $500 was made prior to dissolution of the community and could not therefore have effected a ratification. She contends there was no showing she spent the $500 to purchase her mobile home either before or after the community was dissolved. We agree that the $500 paid for the mobile home does not establish acts of ownership by plaintiff after the divorce.
However, as the trial court held, plaintiff acknowledged the agreement in her pleadings. She did not contend the agreement was invalid, but rather sought to have it recognized with the understanding the settlement did not affect Lot 17 of Block B. We reject the contention that the pleadings only reflect plaintiff's state of mind or intent at the date of execution of the letter agreement. In paragraph 7 of the petition and in the prayer plaintiff expressly refers to the letter agreement of June 30, 1967. The pleadings and evidence in the record refer to the agreement confected at plaintiff's initiative.
Had plaintiff written a letter to Hagar acknowledging their agreement and seeking an amendment by mutual consent, that would constitute a ratification. The result is the same where she alleges the agreement and prays to have it construed. Although not so labeled, this was an action for reformation of the agreementnot an action to annul it or have it set aside.
While a pleading seeking to annul or set aside an agreement would not ratify it simply because the pleading recited execution of an instrument, we do find ratification in a pleading which seeks to recognize an agreement and have it construed in a way totally inconsistent with its stated terms. Her allegation constitutes a judicial admission that the agreement is valid, and as such is as much a ratification as was the alienation of property which was so recognized in Fisher, supra.
We find no merit to plaintiff's second contention, the one originally advanced in her petitionthat the settlement agreement does not include Lot 17 of Block B. In the third paragraph of the agreement, plaintiff transferred "all" her interest in "all of the other property owned by us acquired during our marriage." There is no exception to this all inclusive language.
On these facts the trial court properly found the agreement affected plaintiff's interest in Lot 17 of Block B and properly rejected her demand for a declaratory judgment.
The trial court judgment is affirmed at appellant's costs.
Affirmed.
WATSON, J., concurs with the additional observation that courts must take a very guarded approach to any agreement between parties executed prior to separation or divorce.